IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| RICHARD ANTHONY DELFELD, JR. | § | |
| Vs. | § | CIVIL ACTION NO. 6:11CV43 |
| PAT BURNETT, *et. al.* | § | |

MEMORANDUM OPINION AND ORDER

Plaintiff Richard Anthony Delfeld, Jr., proceeding *pro se*, filed the above-styled lawsuit on January 25, 2011. On July 11, 2012, the undersigned conducted a hearing to clarify Plaintiffs' claims, as authorized by *Spears v. McCotter*, 766 F.2d 179 (5th Cir.1985). At the hearing, Plaintiff testified concerning his claims. The matter was transferred to the undersigned with the consent of the parties on November 26, 2012.

For the reasons assigned below, the Court finds that the case should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

*Procedural Background*

The named defendants in this case are: Pat Burnett, Charles E. Allen, III, Van Zandt County Sheriff's Department, George Flowers, Van Zandt County Jail, Valerie Peace, Texas Department of Family and Protective Services, Joe Hanley, Van Zandt County Department of Community Supervision and Corrections, Scott Shinn, Dr. Jimmy Dailey, Dailey Medical Clinic, Dan Doe, Pam Smith, Amy Daniels, Colonial Tyler Care Center, Ashley Rutledge, Nicholas Ball, Van Zandt County, Jerry Cato and Van Zandt County District Attorney's Office. On October 24, 2011, the

claims against Dan Doe (Dan Lowe), Valerie Peace, Dr. Jimmy Dailey, Dailey Medical Clinic, Van Zandt County Sheriff's Department, and Van Zandt County Jail were dismissed with prejudice. On the same date, Plaintiff's claim against Texas Department of Family and Protective Services was dismissed without prejudice. An Order was entered on December 14, 2011, dismissing Plaintiff's claim against the Van Zandt County District Attorney's Office without prejudice. On February 3, 2012, Plaintiff's claim against Scott Shinn was also dismissed without prejudice. Finally, on June 22, 2012, the claims against Colonial Tyler Care Center LP and Ashley Rutledge were dismissed with prejudice. Plaintiff did not serve Defendants Joe Hanley or the Van Zandt County Department of Community Supervision and Corrections. As a result, the remaining defendants are: Pat Burnett, Charles Allen, III, George Flowers, Joe Hanley, Van Zandt County Department of Community Supervision and Corrections, Pam Smith, Amy Daniels, Nicholas Ball, Van Zandt County and Jerry Cato.

*Hearing Testimony*

Plaintiff provided testimony at the hearing concerning each of his claims. In addition, Defendant offered several exhibits that were admitted into evidence, including applicable jail records, criminal investigation files, arrest warrants, photographs, a seizure warrant and a forfeiture order. Defendant additionally offered testimony from four witnesses – Charles Allen, Jerry Cato, Pam Smith and Sheriff Burnett. During the course of the hearing, Plaintiff stated that he would like to dismiss his claims against Pam Smith.

Plaintiff lived in a trailer home in Van Zandt County, Texas, with James Helvey. Mr. Helvey had significant health conditions, including diabetes and cancer, and Plaintiff served as Mr. Helvey's caretaker. On Saturday, January 24, 2009, Mr. Helvey suffered a health emergency and was taken

to the hospital by ambulance. The EMS workers that tended to Mr. Helvey reported to the authorities that the living conditions in the home were deplorable and inhumane. As a result, an investigator, Charles Allen, and two deputies, Grubbs and Jones, went to the home to conduct a welfare check. Some time later, another investigator, Jerry Cato, arrived at the property. Plaintiff told Allen that he had a medical power of attorney for Mr. Helvey. Upon entering the home, Allen discovered that the home was extremely cold with no heater, there was no running water or electricity and the home was soiled with urine and feces. The home was filthy and had a strong odor. Additionally, the officers viewed and smelled a large number of both sick and deceased animals in plain view on the property. The deceased animals viewed on the property were in varying states of decay. The deceased animals included goats, llama and rabbits. The officers noted that there was very little water and no food out for the animals. The officers contacted the SPCA and Adult Protective Services. Both agencies responded and came to look at the property. Allen photographed the property. The photographs, admitted into evidence at the hearing, show the condition of the home, deceased animals, and the living conditions of the many live animals on the property. Although he believed that the conditions he viewed would amount to probable cause to arrest Plaintiff, Allen decided to obtain an arrest warrant. Allen testified that his subsequent investigation revealed that Mr. Helvey had been giving Plaintiff money to pay for utilities, but the money was spent elsewhere.

The following day, Sunday, January 25, 2009, Allen submitted affidavits to the Justice of the Peace, Pct. 4, seeking arrest warrants for the offenses of Injury to a Disabled Person and Cruelty to Non Livestock Animals. Arrest warrants were issued for those offenses, as well as seizure warrants for the seizure of the animals on the property. Deputy Jerry Cato submitted the application for the

seizure warrant, asserting that he viewed goats, sheep, rabbits, turkey, dogs, cats, ducks, geese, alpaca and chickens on the property lacking food, water and basic care. Plaintiff was arrested on January 25, 2009, and was taken to the Van Zandt County Jail. Plaintiff complains that Sheriff Burnett allowed media to be present at the time of his arrest and that Allen and Burnett talked to the media before investigating the facts. Pursuant to the seizure warrant, approximately 185 live animals were seized and removed from the property for veterinary evaluation. A Forfeiture Order was entered on January 30, 2009, rendering the seized animals forfeited as a result of their cruel treatment by Plaintiff, and taxing costs against Plaintiff. Plaintiff testified that he was seen by a Justice of the Peace on Monday, January 26, 2009. Plaintiff was informed of the charges and bond was set. Plaintiff did not post bond until March 6, 2009, after his bond was reduced on March 3, 2009.

Plaintiff complains about the conditions of the jail during his incarceration. Plaintiff alleges that he did not have running water in his cell for the first few days and that he did not have access to a telephone. Plaintiff acknowledged that he was given cups of water from jailers. Nurses notes from the applicable time period state that Plaintiff refused to drink water from the sink in his cell because the plumbing on the sink was connected to the commode in his cell. Plaintiff also acknowledged that there was a telephone in the hallway, but he did not know how to use it. He estimated that he was able to make a phone call on his fourth or fifth day of incarceration. Plaintiff additionally complains that he did not have access to the law library or mail supplies. An attorney was appointed to represent Plaintiff on his criminal charges. Plaintiff did not dispute that mail supplies were available for purchase and he did not request indigent mail supplies. With regard to his medical treatment, Plaintiff testified that it took a few days for him to receive his blood pressure medication. He acknowledged that the medication was ordered for him the day after he entered the

jail.

Plaintiff was arrested again on March 20, 2009, on the cruelty to livestock charge. This time, Plaintiff was arrested by the Smith County Sheriff's Department and he was initially held at the Smith County Jail. Plaintiff complains that Burnett, Flowers and Allen failed to get him transferred to the Van Zandt County Jail in a timely fashion. He was transferred to Van Zandt County on April 3, 2009, and he bonded out the following day. According to Plaintiff, he was never indicted on the Injury to a Disabled Person or Cruelty to Non Livestock Animals charges and they were eventually dismissed for lack of prosecution.

*Discussion and Analysis*

In this case, Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Sheriff Burnett allowed media to be present when he was arrested and spoke to the media. To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege facts showing that a person acting under color of state law has deprived him of a constitutional right. Section 1983 suits may, for example, be used to sue a state employee using or abusing power that is possessed by virtue of state law to violate a person's constitutional rights. *See Monroe v. Pape*, 365 U.S. 167, 184 (1961); *accord, Brown v. Miller*, 631 F.2d 408, 410-11 (5th Cir. 1980). In this Circuit, before a plaintiff may maintain a civil rights suit, he must show an abuse of governmental power that rises to a constitutional level. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981). A civil rights plaintiff must allege a deprivation of a federally protected right in order to set forth a *prima facie* case. *Maine v. Thiboutot*, 448 U.S. 1 (1980); *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982). Plaintiff does not identify a constitutional right that was allegedly violated by Burnett and none is apparent.

To the extent Plaintiff may be suing Sheriff Burnett because he is the supervisor of the other defendants, it is noted that in order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrate a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986). Plaintiff has not alleged any facts showing participation by Sheriff Burnett in an alleged act of misconduct that violated a constitutional right. The claims against Sheriff Burnett fail to state a claim upon which relief may be granted.

Similarly, Plaintiff has not alleged facts showing a constitutional violation by Flowers. Plaintiff states that Flowers was the Chief Jailer and failed to give him stamps and paper. Plaintiff admitted that these items were available for purchase and he did not submit a request for indigent supplies. Further, it appears that Plaintiff is assuming responsibility by Flowers because he was in charge of the jail. Plaintiff has not alleged any facts showing participation by Flowers in an alleged act of misconduct that violated a constitutional right. The claims against Flowers fail to state a claim upon which relief may be granted.

Plaintiff is suing Smith and Daniels concerning his medical care at the Van Zandt County Jail. Plaintiff complains that he missed several days of his blood pressure medication. Plaintiff alleges that Nurse Daniels did not let him keep the medication that he brought with him to the jail and, instead, ordered new medication. The Eighth and Fourteenth Amendments preclude prison or jail officials from interfering with the safety of pretrial detainees and convicted prisoners. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir.1996) (*en banc*). In determining culpability, the issue is whether prison or jail official acts with deliberate indifference. *Id*. at 650. Deliberate indifference occurs when a prison or jail official knows that a prisoner faces a substantial risk of

serious harm and disregards that risk. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994). The official must both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

The nurses notes from the jail records reveal that Plaintiff was evaluated after being booked into the jail and was seen regularly thereafter. Plaintiff acknowledged that his blood pressure medication was ordered on January 27, 2009, the day after he was first seen by a nurse at the jail. Plaintiff stated at the hearing that he no longer wished to pursue his claim against Smith, but he complains that Daniels did not permit him to keep medication that he brought with him to the jail.

Allegations of malpractice and negligence do not provide a basis in law for § 1983 suits, and the claims should be dismissed as frivolous. *Graves v. Hampton*, 1 F.3d 315, 319-320 (5th Cir. 1993). *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Further, dissatisfaction with medical treatment does not constitute "deliberate indifference" to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle v. Gamble*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). A court may consider the medical records presented at a *Spears* hearing to determine that the quality or nature of medical treatment did not amount to deliberate indifference. *Varnado v. Collins*, 920 F.2d 320 (5th Cir. 1991). The facts alleged by Plaintiff and developed during the *Spears* hearing do not support a claim of deliberate indifference. To show indifference, Plaintiff must do more than show that he did not receive the treatment he wanted – he must submit evidence that jail officials, "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238

(5th Cir.1985)). The claims against Smith and Daniels fail to state a claim upon which relief may be granted.

Next, Plaintiff sues Nicholas Ball. Plaintiff assert that Ball was the prosecutor on the case involving the forfeiture of his animals. Prosecutors enjoy absolute immunity for initiating a prosecution and presenting the State's case, to the extent that the prosecutor's actions are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984 (1976). Actions "intimately associated with the judicial phase of the criminal process" includes all actions "which occur in the course of [the prosecutor's] role as an advocate for the State." *Buckley v. Fitzsimmons*, 509 U.S. 259, 272, 113 S.Ct. 2506 (1993). All claims against Ball concern his activities as a prosecutor initiating and/or presenting the forfeiture action. He is entitled to absolute immunity and the claims against him should be dismissed.

Plaintiff additionally names Van Zandt County as a defendant. Municipalities cannot be sued under § 1983 on a theory of vicarious liability for the actions of its employees; rather, an official policy must have caused the employee to violate another's constitutional rights. *Id.* at 691, 98 S.Ct. at 2036. In *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*), the Fifth Circuit set forth the framework for determining municipal liability under § 1983:

> A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy.
>
> Official policy is:
>
>> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>>
>> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well

> settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.
>
> Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

Plaintiff asserts a conclusory allegation that the county "sanctions" the taking of property and making a "media spectacle" of it. Plaintiff has not, however, alleged facts showing a deprivation of constitutional rights resulting from an official policy or custom of the county. Accordingly, they have not alleged facts stating a claim against Van Zandt County pursuant to § 1983.

Finally, Plaintiff is suing Allen and Cato for their participation in obtaining arrest and seizure warrants. Allen testified that Plaintiff consented to a search of the property on January 24, 2009. Plaintiff denies consenting to a search. The Fourth Amendment protects individuals against unreasonable searches and seizures. "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801 (1991). The warrantless entry into an individual's home without consent is presumptively unreasonable, but may be justified if there is probable cause and exigent circumstances. *United States v. Maldonado*, 472 F.3d 388, 392 (5th Cir.2006). There is no set formula for determining when exigent circumstances justify a warrantless search. *Id*. at 393. Probable cause exists if, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime is inside or an illegal act is taking place. *United States v. Newman*, 472 F.3d 233, 236-37 (5th Cir.2006). The focus is on the reasonableness of the officer's actions in light of the circumstances of the scene as it would appear to a reasonable person standing in the shoes of the officer. *See United States v. Blount*, 123 F.3d 831, 838 (5th Cir.1997). Further, Allen would be entitled to qualified immunity for the search if "a reasonable person in [his]

position could have believed he had probable cause" to conduct the search. *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir.2001) (citing *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir.2000).

Taking Plaintiff's allegations as true, as required at this stage of the proceedings, the Court assumes that Plaintiff did not consent to a search of his home. The totality of circumstances, however, shows that officers had probable cause to believe a crime was being committed on the property and exigent circumstances justified the entry into Plaintiff's home. Officers responded to the scene after EMS workers reported the deplorable, inhabitable condition of Plaintiff's home where Plaintiff was caring for a very sick, elderly man. In plain view on Plaintiff's property were numerous dead animals, some that appeared recently deceased and some that were merely fur and bones. In addition, there were approximately 185 more animals on the property in cages and pens that were visibly in need of immediate care. Plaintiff has not alleged any facts showing that officers knowingly provided false information to secure the arrest and seizure warrants or gave false information in reckless disregard of the truth. *See Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674 (1978). Plaintiff has not alleged viable claims against Allen and Cato and the claims against them should be dismissed.

As a result of the foregoing discussion and analysis, the Court finds that the remaining claims should be dismissed with prejudice. It is accordingly

**ORDERED** that the remaining claims in this case are **DISMISSED** with prejudice.

So **ORDERED** and **SIGNED** this **10** day of **January, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE